UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Case No.: 3:19-cv-534

COLONY INSURANCE COMPANY,

PLAINTIFF

-against-   **COMPLAINT**

BUCKEYE FIRE EQUIPMENT CO.

DEFENDANT.

Plaintiff Colony Insurance Company ("Colony"), by and through its undersigned counsel, hereby files its Complaint for Declaratory Judgment against Defendant Buckeye Fire Equipment Co. ("Buckeye"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et. seq.*

2. This action involves Buckeye's request for insurance coverage for over 100 underlying actions based on alleged contamination of ground water, drinking water supplies and/or property from toxic chemicals manufactured, distributed and/or sold by Buckeye ("Underlying Actions").

3. The Underlying Actions have been transferred for Multi-District Litigation proceedings as part of *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL, No. 2:18-mn-02873-RMG, pending in the United States District Court for the District of South Carolina, Judge Richard M. Gergel presiding.

4. As described on the MDL Court's website for the Underlying Actions:

1

This multidistrict litigation is currently comprised of approximately one hundred cases pending before this Court. Additional cases are expected to be filed or transferred to this Court in the coming months. These cases all involve varied causes of action and claims relating to per- or polyfluoroalkyl substances (PFAS). Plaintiffs generally allege that aqueous film-forming foams (AFFFs) containing perfluorooctanoic acid (PFOA) and/or perfluorooctane sulfonate (PFOS), two types of PFAS, contaminated groundwater near various military bases, airports, and other industrial sites where AFFFs were used to extinguish liquid fuel fires. The plaintiffs allege that they were caused personal injury, a need for medical monitoring, property damage or other economic losses.

http://www.scd.uscourts.gov/mdl-2873/

5. As detailed below, Colony respectfully seeks a declaration that it has no duty to defend (and therefore no duty to indemnify) the Underlying Actions, including any "tag along" actions based on the same or similar AFFF allegations, under the plain language of the Colony Policy's Hazardous Materials Exclusion.[1]

## THE PARTIES

6. An actual and justiciable controversy exists among the parties for which a declaratory judgment setting forth their respective rights and obligations under the subject insurance policy is necessary and appropriate.

7. Plaintiff Colony is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Richmond, Virginia.

8. Defendant Buckeye is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Kings Mountain, North Carolina.

---

[1] Colony respectfully reserves all rights with respect to additional impediments or limitations to coverage, including on whether the Underlying Actions involve covered "bodily injury" or "property damage" occurring during the policy period and whether damages were caused by an "occurrence"/accident, as required by the Policy. Any covered claim would also be subject to the Policy's deductible provisions. But, all such coverage issues become moot if the Court grants the requested relief herein on the Hazardous Materials Exclusion.

2

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1332(a), as diversity of citizenship exists between Colony and Buckeye and the amount in controversy (*i.e.*, the alleged underlying injury claims and defense costs associated with the Underlying Actions) exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue in this District is proper, pursuant to 28 U.S.C. § 1391(b)(1), as this is a judicial district in which the defendant resides.

## FACTUAL ALLEGATIONS

**A.     The Underlying Actions**

11. As detailed below, Buckeye seeks insurance coverage in connection with the Underlying Actions. The Underlying Actions that Buckeye has tendered to Colony are referenced in the case list attached hereto as Exhibit A. The underlying complaints are centralized and available through the MDL Court as "Member Cases", at https://ecf.scd.uscourts.gov/cgi-bin/qryAscCases.pl?247115. Due to the volume of those complaints (thousands of pages), Colony has not included copies herewith but will provide them at the request of the Court or Buckeye (which already has copies of all pleadings).

12. Buckeye has been dismissed without prejudice from the Underlying Actions filed in the District of Colorado (approximately forty actions) because its products were purportedly not sold or distributed in the region(s) at issue in those actions.

13. Buckeye has provided Colony with approximately twenty-five filings that consist of "writs" of summons only – there is no complaint or allegations included with such filings (filed primarily in Pennsylvania state court). It is Colony's understanding that Buckeye does not seek

3

coverage with respect to such filings; rather, Buckeye has indicated that it will tender any subsequent AFFF complaints filed by the respective "writ" plaintiffs.

14. Buckeye and the MDL Court expect additional actions based on the same or similar AFFF allegations at issue in the Underlying Actions. *See* http://www.scd.uscourts.gov/mdl-2873/ ("[a]dditional cases are expected to be filed or transferred to this Court in the coming months.")

15. The MDL Court's December 7, 2018 initial Transfer Order made clear: "All of the actions…involve allegations that aqueous film-forming foams (AFFFs, which are used to extinguish liquid fuel fires) contaminated the groundwater near certain airports and other industrial locations with perfluorooctane sulfate (PFOS) and/or perfluorooctanoic acid (PFOA), which allegedly were contained in the AFFFs and are toxic." *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, Transfer Order, at Doc. 239.

16. Indeed, the Underlying Actions seek relief for alleged injury and/or damage (or potential injury and/or damage) resulting from the contamination of groundwater and/or drinking water supplies with PFOS, PFOA and/or other toxic chemicals used (or otherwise contained) in the AFFF manufactured, sold and/or distributed by Buckeye. As detailed below, all such claims are expressly excluded under the Policy's Hazardous Materials Exclusion.

17. There are three general categories of plaintiffs in the Underlying Actions: (1) individuals or purported classes of individuals; (2) governmental entities and public utility companies supplying water to communities; and (3) farming or other businesses.

### 1. Individual/Class Plaintiffs

18. Although the causes of action, alleged damages and relief sought in the individual or purported class lawsuits may differ slightly, the allegations with respect to Buckeye and the nature of its alleged acts, omissions and liability are substantively the same in each action. Plaintiffs allege

4

that, for years, Buckeye manufactured, sold and/or distributed AFFF using (or otherwise containing) PFOS, PFOA and/or other toxic chemicals. It is alleged that these man-made chemicals are toxic, persist in the environment for decades, that exposure to these toxic substances (including consumption of contaminated drinking water) is associated with health risks, including increased risks for certain cancers and other diseases, and that the injuries associated with exposure can take months or years to arise.

19. Underlying plaintiffs allege that Buckeye knew of the health and environmental hazards associated with the toxic chemicals in AFFF, but nevertheless knowingly manufactured, sold and/or distributed same, failed to provide instructions and warnings about the health and environmental hazards, and/or failed to recall the product.

20. With respect to the complaints that allege personal injury, plaintiffs allege that they have been harmed by exposure to the toxic chemicals and/or that harm may occur in the future due to increased risk of health effects from exposure to same.

21. With respect to the complaints that allege damage to property, plaintiffs generally allege properties have been damaged "due to the presence" of toxins in their homes, soil, surrounding property and/or potable water supply or that the existence of contaminated drinking water has resulted in "devaluation of property" values.

22. The specific relief sought in these lawsuits varies, but generally includes some or all of the following: punitive, compensatory and consequential damages, as well as injunctive relief, including for: (1) implementation and funding of testing protocols and medical monitoring programs; (2) installation and maintenance of filtration systems; and/or (3) remediation of property.

### 2. Governmental Entities And Utility Plaintiffs

23. The respective actions brought by municipalities and utility company plaintiffs are likewise based on underlying allegations of contamination from Buckeye's AFFF product.

24. For example, the *City of Dayton* alleges that the "AFFF Manufacturers' products contained perfluorooctanoic acid ('PFOA') and/or perfluorooctane sulfonic acid ('PFOS'), and/or contained the precursors of PFOS and PFOA" – referred to collectively as "PFAS", which are "toxic" chemicals. *City of Dayton v. 3M Company et al.*, No. 2:18-mn-3496-RMG, First Amended Complaint, ¶ 3-5. Plaintiff "brings this action to recover damages incurred and to be incurred by the City in investigating, monitoring, remediating, treating and otherwise responding to the…water contamination…caused by Defendants' AFFF products, and ensure the cost of the water treatment be borne by the polluters…." *Id.*, ¶ 23.

25. The same or similar AFFF claims are pled in other actions brought by similar plaintiffs, including those filed respectively by: *City of Stuart*, *County of Barnstable*, *Town of Barnstable*, *County of Dutchess*, *City of Tucson*, *Emerald Coast*, *Hampton Bays*, *New Jersey American Water Company*, *Suffolk County Water Authority*, *Village of Farmingdale, City of Newburgh*, *Town of East Hampton*, *New York American Water Company*, *Ridgewood Water*, *Atlantic City Municipal Utilities Authority* and *California-American Water Co*.

26. The State plaintiffs filed similar AFFF related actions.

27. The *State of Ohio* complaint "centers on the…contamination and pollution of Ohio's natural resources caused by Defendants' products with…PFOA…and PFOS", which "are highly toxic" chemicals. *The State of Ohio v. 3M Company et. al.*, 2:19-cv-00990-RMG, Complaint, ¶ 2. Ohio seeks costs for "monitoring, investigating, analyzing and remediating harms caused by the

PFOS and/or PFOA released by Defendants' products into the environment and contaminating public natural resources within the State." *Id.*, ¶¶ 19, 246.

28. The State of New Jersey (through its Attorney General) alleges "injuries to natural resources of the State of New Jersey…including groundwater, surface water, sediments, soils, and biota, as a result of releases of…PFOS…and…PFOA…. Defendants' AFFF products were used at various locations throughout New Jersey, causing widespread contamination of the State's natural resources with PFOS and PFOA." *Gurbir S. Grewal, Attorney General Of The State Of New Jersey et al. v. 3m Company et al.*, 2:19-cv-02199-RMG, Complaint, ¶ 1.

29. New York, Vermont and New Hampshire likewise seek costs for investigation and/or remediation of environmental contamination from the toxic chemicals in AFFF. *State of New York v. 3M Company et al.*, 2:19-cv-01022-RMG, Complaint; *State of Vermont v. 3M Company et al.*, 2:19-cv-02281-RMG, Complaint; *State of New Hampshire v. 3M Company et al*, 19-cv-02285-RMG, Complaint.

### 3. Other Plaintiffs

30. The actions filed by businesses are also based on contamination from AFFF chemicals.

31. The *Day Star Dairy* plaintiff seeks "to recover past and future damages caused by the contamination of its groundwater supply by per- and polyfluoroalkyl substances ('PFAS'), including but not limited to perfluorooctanoic acid ('PFOA') and/or perfluorooctane sulfonic acid ('PFOS')." *Todd Teune and Carolyn Teune, d/b/a Day Star Dairy v. 3M Company et. al.*, 2:19-cv-01645-RMG, Complaint, ¶ 1. Buckeye allegedly "manufactured, marketed, and sold…AFFF…and/or the PFAS constituents of AFFF, a firefighting product…that was used in areas around the Day Star Dairy and that eventually contaminated the groundwater relied upon by Plaintiff." *Id.*, ¶ 3. Plaintiff alleges that, as a result of the "contamination caused by Defendants,

7

Day Star has been forced to spend a substantial amount in excess of $200,000 for a PFAS filtration system to be installed on the impacted water supply wells." *Id*., ¶ 2.

32. Plaintiff in *Highland Dairy* similarly alleges that "Defendants' AFFF products … contaminated the groundwater supply from which Plaintiff draws water for its domestic use, crops, livestock, dairy production and agricultural services", and that as a result, plaintiff "has incurred and will incur damages to the property and business." *Art Schaap and Renee Schaap d/b/a Highland Diary v. 3M Company et.al.*, 19-cv-01644-RMG, Complaint, ¶¶ 49-50.

33. The *Sioux Falls Regional Airport Authority* plaintiff similarly "seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor PFOS and PFOA contamination on Plaintiff's [airport] Property and groundwater caused by the use of Defendants' AFFF containing PFOA and/or PFOS on Plaintiff's Property…." *Sioux Falls Regional Airport Authority v. 3M Company et al.*, 2:19-cv-01850-RMG, Complaint, ¶ 12.

34. In the *Valero Refining Company* action, plaintiff alleges that it "has suffered…costs relating to disposal and replacement of unused products and detecting, investigating, monitoring, and addressing impacts from the use of…AFFF products, including PFOS and/or PFOA." *Valero Refining Company-Oklahoma v. 3MCompany et al.*, 2:19-cv-02192-RMG, Complaint, ¶ 63. Plaintiff alleges "property damages in terms of costs of abatement and/or loss of market value due to…Defendants' AFFF products' contamination on, under and from the Sites" referenced in the complaint. *Id*.

### B. The Colony Policy

35. Colony issued Commercial General Liability insurance to Buckeye under policy number GL 146722 for the policy period beginning July 1, 2008 through July 1, 2009. The Colony Policy is attached hereto as exhibit B.

36. The Insuring Agreement of the Colony Policy's Commercial General Liability Coverage Form states, in part:

> **SECTION I - COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> \* \* \*
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; …

37. The Colony Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Section V, No. 3.

38. The Colony Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V, No. 13.

9

39. The Colony Policy defines "property damage" to mean: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." Section V, No. 17.

40. The Colony Policy contains a **HAZARDOUS MATERIALS EXCLUSION** Endorsement (Form U003-0702), which states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**HAZARDOUS MATERIALS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f.** and **SECTION 1- COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n.** and **m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

**(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

**(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

**B. SECTION V - DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

41. The Colony Policy defines the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."  Section V, No. 15.

42. Buckeye seeks defense and indemnity in connection with the Underlying Actions under the Colony Policy.  The Underlying Actions are ongoing (in the discovery phase).

43. Colony has informed Buckeye that there is no duty to defend or indemnify the Underlying Actions, including any additional actions based on the same or similar AFFF allegations, under the express language of the Hazardous Materials Exclusion, among other impediments to coverage.

44. Buckeye has not substantively responded to Colony's coverage position, but continues to tender additional Underlying Actions to Colony.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment - Hazardous Materials Exclusion)

45. Colony repeats and realleges the above allegations as fully set forth herein.

46. The Underlying Actions are based on allegations of injury or damage from contamination relating to Buckeye's toxic AFFF chemicals.  As such, there is no coverage under the Hazardous Materials Exclusion (Section A.(1)), which expressly precludes coverage for any:  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged

11

or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials", defined to include "pollutants" and materials containing them, including any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, fumes, acids, alkalis, chemicals and waste.

47. Certain of the Underlying Actions also request or demand that Buckeye or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or otherwise respond to or assess the effects of Buckeye's toxic AFFF chemicals. Such requests or demands are further excluded under Section A.(2)(a) of the Hazardous Materials Exclusion

48. Certain Underlying Actions also involve claims or suits by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Buckeye's toxic AFFF chemicals. Such claims or suits are further excluded under Section A.(2)(b) of the Hazardous Materials Exclusion.

49. Certain parties in the Underlying Actions also seek contribution and/or indemnification for injury or damage payment obligations relating to the toxic AFFF chemicals. Such claims are further excluded under Section A.(3) of the Hazardous Materials Exclusion.

50. Certain of the Underlying Actions also allege that Buckeye should have given proper instructions, warnings or advice relating to the toxic AFFF chemicals. Such claims are further excluded under Section A.(4) of the Hazardous Materials Exclusion.

51. Moreover, the Hazardous Materials Exclusion expressly applies whether or not the hazardous materials have any function in Buckeye's business or operation.

WHEREFORE, Plaintiff Colony Insurance Company prays for a declaration that, under the plain language of the Hazardous Materials Exclusion, it has no duty to defend, and therefore no duty indemnify, in connection with the Underlying Actions.

Respectfully submitted,

| | |
|---|---|
| Dated this 14th day of October, 2019. |   *s/W. James Flynn* |

W. James Flynn (NCID No. 25503)
GOODMAN MCGUFFEY LLP
11006 Rushmore Dr., Ste. 270
Charlotte, NC 28277-3606
(704) 887-4985 Phone
(704) 887-4983 FAX
jflynn@gm-llp.com

*Local Counsel*

*AND*

Gary W. Berdeen
STEWART SMITH
1 Park West Circle, Suite 306-D
Midlothian, VA 23114
(804) 533-1718 Phone
(484) 534-9470 FAX
gberdeen@stewartsmithlaw.com

William Stewart
STEWART SMITH
300 Four Falls Corporate Center, Ste. 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
(484) 534-8300 Phone
(484) 534-9470 FAX
WStewart@stewartsmithlaw.com

*Motions for Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*