UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 3:19-cv-00534-FDW-DSC

| | |
|---|---|
| **Colony Insurance Company,** | ) |
| **Plaintiff,** | ) |
| vs. | ) **ORDER** |
| **Buckeye Fire Equipment Co.,** | ) |
| **Defendant.** | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 21). Both parties have fully briefed the motion, and oral arguments were received during a telephonic hearing on October 5, 2020. Accordingly, the matter is now ripe for review. For the reasons stated herein, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and DECLARES that Plaintiff has a duty to defend Defendant in the underlying litigation alleging direct exposure.

**I. BACKGROUND**

  **A. The Parties**

Plaintiff is an insurance company organized under the laws of Virginia, with its principal place of business in Virginia. (Doc. No. 1, p. 2). Defendant is a company that manufacturers fire equipment organized under the laws of Ohio, with its principal place of business in North Carolina. (Doc. No. 9, p. 2).

  **B. The Insurance Policy**

Plaintiff insured Defendant under a Commercial General Liability policy, GL 146722, for the period July 1, 2008 through July 1, 2009. Id. at p. 9. The policy imposed upon Plaintiff a duty to defend the insured against suits involving bodily injury or property damage, except in those

lawsuits involving hazardous materials as defined in the Hazardous Materials Exclusion. Id. at pp. 9-10. In relevant part, the Exclusion reads as follows:

> This insurance does not apply to:
>
> **Hazardous Materials**
> (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.
>  . . .
>
> This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.
>
> B. **SECTION V – DEFINITIONS** is amended and the following added:
>
> "Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

(Doc. No. 1-2, p. 32).

### C. The Underlying Litigation

Defendant has been sued in hundreds of underlying cases, relating to Defendant's manufacture of fire equipment containing toxic aqueous film-forming foams ("AFFF"). AFFF is a fire suppressing foam. *Aqueous Film-Forming Foam*, U.S. NAVAL RSCH. LAB'Y, https://www.nrl.navy.mil/accomplishments/materials/aqueous-film-foam (last visited Oct. 6, 2020). In the underlying litigation, AFFF is alleged to contain man-made chemicals such as PFOA and PFOS, which are known to be highly carcinogenic. (Doc. No. 1, p. 4). Underlying plaintiffs have sued Defendant and others for bodily injury or property damage caused by exposure to AFFF. Approximately one-third of the underlying cases allege harm from both direct and environmental exposure. (Doc. No. 17-1). Representative language from one such case alleging direct and environmental exposure is as follows: "During [underlying plaintiff's] employment as a firefighter and firefighter instructor, he was significantly exposed to elevated

2

levels of PFOS and PFOA *in their concentrated form as a result of regular contact* with [d]efendant's AFFF products *and through PFOS and PFOA having contaminated the Fire College well system*." (Doc. No. 21-4, p.10) (emphasis added). These underlying cases have been consolidated into Multi-District Litigation in the United States District Court for the District of South Carolina. *Aqueous Film-Forming Foams (AFFF) Products Liability Litigation, MDL No. 2873*, U.S. DIST. CT., DIST. OF S.C., https://www.scd.uscourts.gov/mdl-2873/ (last visited Oct. 7, 2020). Defendant has requested insurance coverage for the underlying cases alleging direct exposure. (Doc. No. 2, p. 1).

### D. Procedural Background

On October 14, 2019, Plaintiff filed this action seeking a declaratory judgment that it has no duty to defend Defendant in the underlying litigation. (Doc. No. 1). After this Court denied Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 19), Plaintiff filed a Motion for Summary Judgment. (Doc. No. 21).

In its Motion for Summary Judgment, Plaintiff argues there is no duty to defend any of the underlying lawsuits alleging direct and environmental exposure because the Hazardous Materials Exclusion excludes coverage for those injuries "which would not have occurred *in whole or in part* but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'hazardous materials' *at any time.*" (Doc. No. 21-1, p. 16) (emphasis in original). Additionally, plaintiff argues the case on which Defendant relies, W. Am. Ins. Co. v. Tufco, 409 S.E.2d 692 (N.C. Ct. App. 1991), is not binding on this Court. (Doc. No. 21-1, p. 17).

In opposition, Defendant argues Plaintiff has a duty to defend the underlying cases that allege direct and environmental exposure because the Exclusion requires discharge into the environment under Tufco, which is binding on this Court. (Doc. No. 22, p. 8). Defendant concedes

3

Plaintiff has no duty to defend any of the underlying actions which allege *solely* environmental exposure. (Hr'g Tr. p. 18). Both parties agree the issue of indemnification is not yet ripe. (Hr'g Tr. pp. 8, 12). Accordingly, this Court's analysis is limited to the issue of whether Plaintiff has a duty to defend Defendant in underlying cases alleging direct exposure.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. 56(e)). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

**III.    ANALYSIS**

Jurisdiction in this Court is properly based on diversity. 28 U.S.C. § 1332 (2018). As such, North Carolina substantive law controls. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938). Moreover, both parties agree North Carolina contract interpretation law controls this dispute.

Whether an insurer's duty to defend has arisen depends primarily on the facts alleged in the initial pleadings against the insured defendant. "When the pleadings state facts demonstrating

4

that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt. of Carolinas, Inc. v. Peerless, 340 S.E. 2d 374, 377 (N.C. 1986) (citations omitted). If, however, the pleadings allege facts indicating that the injury in question is not covered by the policy, the duty to defend may not arise. Id. "[A]llegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insured." Id. at n.2. "An insurer is excused from its duty to defend *only* 'if the facts are not even arguably covered by the policy.'" Crandell v. Am. Home Assurance Co., 644 S.E.2d 604, 606 (N.C. App. 2007) (quoting Peerless, 350 S.E.2d at 378) (emphasis added).

As the underlying facts are not in dispute, the central issue in this case is whether W. Am. Ins. Co. v. Tufco, 409 S.E.2d 692 (N.C. Ct. App. 1991) is binding on this Court. (See Doc. No. 12, p. 16). In Tufco, the North Carolina Court of Appeals affirmed a grant of summary judgment in favor of the insured and declared the insurer had a duty to defend notwithstanding the pollution exclusion clause in a CGL policy. Tufco, 409 S.E.2d at 700. In Tufco, the insured was sued for property damage directly caused by "vapors or fumes released from the chemicals used by [the insured] during" the insured's routine business operations. Id. at 694. The insurer sought a declaratory judgment that it had no duty to defend the insured because the relevant CGL policy contained a pollution exclusion clause, which excluded coverage for "'bodily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants." Id.

5

After noting that the CGL policy was ambiguous,[1] the court explained that the "operative policy terms 'discharge,' 'dispersal,' 'release,' and 'escape' are environmental terms of art." Id. at 700. As such, "any 'discharge, dispersal, release, or escape' of a pollutant must be into the environment to trigger the pollution exclusion clause and deny coverage to the insured." Id. Thus, under North Carolina law[2] an insurer may not deny coverage to an insured based on a pollution exclusion, or any variation thereof, if "the occurrence and the resulting personal injury and property damage allegedly suffered by [underlying plaintiffs] are . . . not the prototypical environmental harms that a pollution exclusion clause is generally intended to protect against." Auto-Owners, Ins. Co. v. Potter, 105 F. App'x 484, 496 (4th Cir. 2004) (applying Tufco and finding a duty to defend where the insured was sued for bodily injury caused by direct contact with contaminated water).

Insofar as Plaintiff argues this Court need not—and should not—follow Tufco, this Court is unpersuaded. As Defendant outlined in its brief and at oral argument, the relevant Tufco holding has not been contradicted by either North Carolina case law or statutory law. (Doc. No. 22, pp. 14-15). Indeed, the Fourth Circuit Court of Appeals explicitly found that it was "bound to follow Tufco's determination that the [pollution exclusion] clause at issue constitutes a series of terms of art" because Tufco's relevant holding was "not directly contradicted by North Carolina state law, and . . . other North Carolina state cases applying [a] pollution exclusion clause have done so within the context of traditional environmental pollution." Potter, 105 F. App'x at 495 (citing Waste Mgmt., 340 S.E.2d at 380-81; Home Indem. Co. v. Hoechst Celanse Corp., 494

---

[1] As the Tufco court explained, "'when the coverage provisions of a policy include a particular activity, but that activity is later excluded, the policy is ambiguous.'" Tufco, 409 S.E.2d at 679 (quoting Southeast Automotive Corp. v. U.S. Fire Ins. Co., 337 S.E.2d 167, 169 (N.C. App. 1985)).
[2] Tufco was overruled on other grounds not relevant to the instant case in Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 524 S.E.2d 558 (N.C. 2000).

S.E.2d 774 (N.C. Ct. App. 1998)). "[T]he meaning of language used in the policy is a question of law," Auto-Owners Ins. Co., 105 F. App'x at 489 (citation omitted); as such, this Court concludes that terms such as "discharge, dispersal, seepage, migration, release, or escape" are environmental terms of art, and policy exclusions using this language require traditional environmental pollution to deny coverage to an insured under North Carolina law.[3]

Here, the underlying complaints for which Defendant seeks coverage allege personal injury caused by both traditional environmental pollution *and* direct contact with or exposure to AFFF. The Hazardous Materials Exclusion at issue excludes coverage for personal injury that would not have occurred "but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'hazardous materials' at any time." (Doc. 1-2, p. 32). Because the relevant underlying complaints allege injury caused by something other than traditional environmental pollution, which the policy exclusion requires as a matter of law, Plaintiff may not deny coverage to Defendant with respect to the underlying claims alleging direct exposure.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is hereby DENIED. Having determined that there are no factual issues to resolve, the Court finds Defendant is entitled to judgment as a matter of law. Plaintiff has been put on sufficient notice during oral argument and in briefing by the parties such that this Court finds it appropriate to GRANT summary judgment

---

[3] Even if Tufco does not apply in this case, North Carolina law is clear that even the "mere possibility" that an injury is covered is sufficient to impose a duty to defend. See Waste Mgmt., 340 S.E.2d at 377 n.2; see also Breezewood of Wilmington Condo. Homeowners' Ass'n, Inc. v. Amerisure Mut. Ins. Co., 335 F. App'x 268, 271 (4th Cir. 2009) ("Any doubt as to coverage is resolved in favor of the insured"); Builders Mut. Ins. Co. v. North Main Const., Ltd., 637 S.E.2d 528, 530 (N.C. 2006) ("'As a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded.'" (quoting Avis v. Hartford Fire Ins. Co., 195 S.E.2d 545, 549 (N.C. 1973))).

7

in favor of Defendant pursuant to Fed. R. Civ. P. 56(f)(1). The Court respectfully directs the Clerk of Court to enter final judgment in accordance with the terms of this Order and CLOSE this case.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECLARED that Plaintiff has a duty to defend pursuant to its insurance policy, GL 146722, which affords coverage to Defendant for the reasons outlined herein.

IT IS SO ORDERED, ADJUDGED, AND DECLARED.

Signed: October 19, 2020

Frank D. Whitney
United States District Judge